RECEIVED
IN ALEXANDRIA, LA

NOV 0 5 2007

ROBERT H. SHEMWELL CLERK
WESTERN DISTRICT OF LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

SNOOKIE EVANS                          CIVIL ACTION
          Appellant                    NO. 06-2158

VERSUS

MICHAEL J. ASTRUE[1]              JUDGE DEE D. DRELL
COMMISSIONER OF SOCIAL SECURITY  MAGISTRATE JUDGE JAMES D. KIRK
          Appellee

REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE

Snookie Evans ("Evans") filed an application for Disability
Insurance Benefits ("DIB") and Supplemental Security Income
benefits ("SSI")on or about August 30, 2004. (R. 65, 210).  In her
applications, Evans set forth a disability date of July 26, 2003.
She claimed disability due to reflex sympathetic dystrophy. (R.
70).  The claim was initially denied and Evans filed an untimely
request for a hearing before a Federal Administrative Law Judge
("ALJ"). (R. 21).  Because Evans established good cause for the
untimely request she was granted a hearing before Administrative
Law Judge, Lawrence T. Ragona.

---

[1]  On February 12, 2007, Michael J. Astrue became the
Commissioner of Social Security. In accordance with Rule 43(c)(2)
of the Federal Rules of Appellate Procedure, Mr. Astrue is
substituted for Jo Anne B. Barnhart as the appellee in this
action.

The ALJ held the hearing on March 24, 2006.  In attendance were Evans, her attorney, Katharine Geary, and Evans' sister, Patricia Hawthorne, who was a witness at the hearing. (R. 21, 247-250).  The ALJ issued a decision on June 30, 2006 denying benefits. (R. 21-27).  Evans filed a request for review of the ALJ's decision on July 7, 2006. (R. 17-18).  The Appeals Council declined review, and the ALJ's decision became the final decision of the Commissioner of Social Security ("the Commissioner"). (R. 4-6). Thereafter, Evans filed the instant action seeking judicial review of the Commissioner's decision.

To qualify for DIB and/or SSI, a claimant must file an application and be an "eligible individual" as defined in the Act. 42 U.S.C. 1381(a).  Eligibility is dependent upon disability, income and other financial resources.  42 U.S.C. 1382(a).  To establish disability, a claimant must demonstrate a medically determinable physical or mental impairment that can be expected to last for a continuous period of not less than twelve (12) months. Claimant must also show that the impairment precludes performance of the work previously done, or any other kind of substantial gainful employment that exists in the national economy.  42 U.S.C. 1382(a)(3).

## SUMMARY OF PERTINENT FACTS

At the time of the administrative hearing, Evans was 40 years old and lived alone in an apartment in Pineville, Louisiana. (R.

-2-

219-220).  Evans received her GED in 1992 and completed training as an Information Processing Technician in 1994. (R. 76, 221-222). After completing vocation training, Evans obtained a job utilizing her skills, but she returned to work as a waitress because the pay was better. (R. 71, 234).  Evans worked off an on at the Pitt Grill in Alexandria, Louisiana from December of 1986 until August of 2005 when she quit due to the chronic pain she experienced. (R. 220, 224).

Evans testified that she had her gall bladder removed in September of 2003 and within a week of that surgery, she began experiencing unrelenting pain at the incision site.  (R. 223). Evans further testified that she felt the pain on both the outside and inside of her abdomen, that clothing rubbing against the site contributed to the pain as did eating anything more than a small meal.   Evans sought treatment at Huey P. Long Medical Center, Louisiana State University Health Sciences Center in Shreveport, Rapides Regional Medical Center ("Rapides"), Ochsner Health System ("Ochsner"), Space Coast Neurology and Overbrook Hospital, and she submitted records from Rapides, Ochsner, Space Coast Neurology and Overbrook Hospital.

Medical records from Rapides reveal that Evans went to the emergency room on October 27, 2003 complaining of the severe abdominal pain. (R. 126-145).  She insisted that she be admitted to the hospital and she was.  Numerous tests were conducted, but the

-3-

doctors could not find a justifiable reason for her abdominal pain. Accordingly, Evans was discharged from the hospital on October 31, 2003 with prescriptions for anti-inflammatory and pain medications as well as orders to see Dr. Katz in the pain clinic on November 4, 2003 and a referral to see James W. Quillin, Ph.D for a psychological evaluation.[2] (R. 126-145).

From January 27 to October 15, 2004, Evans sought treatment at Ochsner in Metairie, Louisiana. (R. 146-180). Again, tests were conducted, but no physical cause for pain was detected. The doctors determined that the pain was neuropathic rather than abdominal and attempted to alleviate her pain using various courses of treatment with medications, including, but not limited to: Cymbalta, Lexapro, Avinza, Neurontin, Prednisone, Bextra, Flexeril, Elavil, Zoloft, and Klonopin. In addition, doctors prescribed the use of a TENS unit; however, Evans felt little to no relief from any of the prescribed courses of treatment.

Thereafter, Evans sought treatment at Space Coast Neurology in Malabar, Florida. (R. 180-193). She was seen by Dr. Masood Hashmi who diagnosed her with intercostal neuralgia and possible complex regional pain syndrome. Dr. Hashmi found that Evans' pain, sleep pattern and function all improved with conservative therapy - which included a nerve block and prescribed medications. He advised that

---

[2] The record does not show whether or not Evans kept her appointment with Dr. Katz. Testimony from the hearing indicates that she did not follow up with her referral to Dr. Quillin.

she should limit her daily activity, such as no heavy lifting, but he encouraged her to do routine day to day activities.

Evans also sought treatment at Overbrook Hospital in Thailand from December 24, 2005 to December 26, 2005. (R. 195-199). Evans was admitted to the hospital, numerous tests were run and a diagnosis of unknown abdominal pain, chronic cholecyotitis, status post cholecystectomy and complex regional pain syndrome, type II was made.

From the time of her stay at Overbrook Hospital through the time of the hearing, Evans had not sought any medical treatment for her physical or mental ailments. (R. 26). She continued to take medications prescribed by Dr. Hashmi, but she had not increased her dosages as directed by him. (R. 232-233). She advised that her pain was still constant and unremitting and she was unable to work. Evans further advised that a normal day involved waking in the morning, watching television on the couch, eating small meals and retiring to her bedroom in the evenings. She spent ninety percent (90%) of her day lying down, but she could perform chores, such as shopping and cleaning, with the assistance of her mother and sister. (R. 26, 226-227, 232, 243).

Pursuant to the ALJ's order for a consultative mental status examination, Disability Determination Services requested that Daniel J. Lonowski, Ph.D., a clinical psychologist, evaluate Evans. Dr. Lonowski conducted the examination on April 25, 2006 and

employed the following evaluation methods: mental status examination, clinical interview and clinical testing using the Minnesota Multiphasic Personality Inventory-2. (R. 200). This testing revealed that Evans "probably ha[d] many characteristics usually associated with clinical depression" and she was diagnosed with Dysthymic Disorder. (R. 202).

Dr. Lonowski advised that because of her physical and emotional impairments, Evans was unable to perform her work activities.  He further advised that because of her physical condition, "one would expect she could not engage in activities requiring sustained sitting, standing, walking, lifting, carrying or handling objects."  Additionally, he found her social interaction curtailed to a moderate degree and her persistence and pace impacted to a marked degree as her pain would interfere with her ability to concentrate. (R. 202).

The ALJ found Evans met the insured status requirements through December 31, 2007 and that she had not engaged in substantial gainful activity as her work as a waitress did not qualify as such.  (R. 23).  He found that her severe impairments included chronic abdominal and back pain as well as possible complex regional pain syndrome, type II, and dysthmic disorder. (R. 23).  However, these impairments or a combination thereof did not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 24).

The ALJ further determined that Evans had the residual functional capacity to perform a modified range of light work but she could not perform any complex work. (R. 25). Therefore, she could return to her work as a waitress as it did not require her to perform any activities precluded by the residual functional capacity. Ultimately, the ALJ concluded that Evans was not under a disability, as defined by the Social Security Act, from September 26, 2003 through the date of the decision, June 30, 2006. (R. 26).

Standard of Review

In considering Social Security appeals such as the one presently before the Court, the Court is limited by 42 U.S.C. §405(g) to a determination of whether substantial evidence exists in the record to support the Commissioner's decision and whether the decision comports with relevant legal standards. <u>McQueen v. Apfel</u>, 168 F.3d 152, 157 (5th Cir. 1999). For the evidence to be substantial, it must be relevant and sufficient for a reasonable mind to support a conclusion; it must be more than a scintilla but need not be a preponderance. <u>Falco v. Shalala</u>, 27 F.3d 160, 162 (5th Cir. 1994), citing <u>Richardson v. Perales</u>, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). Finding substantial evidence does not involve a simple search of the record for isolated bits of evidence which support the Commissioner's decision but must include a scrutiny of the record as a whole.

A court reviewing the Commissioner's decision may not retry

-7-

factual issues, re-weigh evidence, or substitute its judgment for that of the fact-finder. <u>Fraga v. Bowen</u>, 810 F.2d 1296, 1302 (5th Cir. 1987); <u>Dellolio v. Heckler</u>, 705 F.2d 123, 125 (5th Cir. 1983). The resolution of conflicting evidence and credibility choices is for the Commissioner and the ALJ, rather than the court. <u>Allen v. Schweiker</u>, 642 F.2d 799, 801 (5th Cir. 1981). Also, <u>Anthony v. Sullivan</u>, 954 F.2d 289, 295 (5th Cir. 1992). The court does have authority, however, to set aside factual findings which are not supported by substantial evidence and to correct errors of law. <u>Dellolio</u>, 705 F.2d at 125. However, to make a finding that substantial evidence does not exist, a court must conclude there is a "conspicuous absence of credible choices" or "no contrary medical evidence." <u>Johnson v. Bowen</u>, 864 F.2d 340 (5th Cir. 1988); <u>Dellolio</u>, 705 F.2d at 125.

<u>ISSUES</u>

Evans raises the following issues for appellate review:

1.  The ALJ erred in failing to find Evans disabled, pursuant to the findings and opinions of his own consulting psychologist;

2.  The ALJ erred in assessing Evans' residual functional capacity which resulted in an erroneous finding at Step 4 that Evans could return to past relevant work as a waitress. At a minimum, vocational testimony was required.

<u>Issue No. 1 - Opinion of Consulting Physician</u>

Evans first argues that the opinion rendered by Dr. Lonowski supports a finding of disability. However, opinions on ultimate

-8-

issues, such as disability status under the regulations, are reserved exclusively to the ALJ. See 20 C.F.R. §§ 404.1527(e)(1), 416.927(e)(1). Statements by medical sources to the effect that a claimant is disabled or cannot work are not dispositive, but an ALJ must consider all medical findings and evidence that support such statements. Id. Additionally, the credibility of medical experts and witnesses is a determination left to the ALJ. Greenspan v. Shalala, 38 F.3d 232, 237 (5th Cir. 1994), citing, Scott v. Heckler, 770 F.2d 782, 785 (5th Cir. 1985).

While the ALJ did consider the opinion rendered by Dr. Lonowski, he ultimately determined that it was based upon findings outside the realm of Dr. Lonowski's expertise. Therefore, the ALJ gave the opinion no weight. Dr. Lonowski stated "[t]he medical reports were outside the range of this examiner's expertise and were not attempted to be interpreted." However, he went on to conclude that based upon both Evans' mental and physical impairments, she was unable to perform work. Dr. Lonowski was correct in determining that the medical records were outside of his expertise as he is a clinical psychologist, not a medical doctor, and the ALJ was correct in relying upon that acknowledgment.

Evans further argues that even if Dr. Lonowski was not able to perform an assessment as to Evans' physical limitations, the entire opinion should not be disregarded because he was able to opine as to her limitations due to mental impairments. However, Dr.

-9-

Lonowski blurs the distinctions between limitations based on mental impairments and those based upon physical impairments. In fact, Dr. Lonowski specifically states "she is not able to perform work-related activities because of her *combined* emotional and physical impairments." (R. 202) (Emphasis added). He goes on to state that Evans' inability to "engage in activities requiring sustained sitting, standing, walking, lifting, carrying or handling objects" is "[b]ecause of her physical problems". (R. 202). Additionally, he advises that her concentration *might* be interrupted by her pain, and, thus her persistence and pace would be impacted to a marked degree. (R. 202). All of these statements reflect a reference and reliance upon Evans' medical records and physical impairments, not simply a reliance on a psychological assessment.

Accordingly, there is substantial evidence to support the ALJ's determination that Dr. Lonowski's opinion should be disregarded as it is based upon information and findings outside his expertise.

Issue No. 2 - Residual Functional Capacity

A claimant's impairments may cause physical or mental limitations that affect what he can do in a work setting. Residual functional capacity is a medical assessment based upon all of the relevant evidence of the work a claimant can perform despite his limitations. 20 C.F.R. §416.945. Although that burden of proof in a disability case is on the claimant, that burden shifts to the

Commissioner to show that the claimant is able to perform some other kind of substantial work available in the national economy. Herron v. Bowen, 788 F.2d 1127, 1131 (5th Cir. 1986), and cases cited therein. Also, Babineaux v. Heckler, 743 F.2d 1065, 1067 (5th Cir. 1984). The Commissioner has the burden to establish a claimant's residual functional capacity. See, Rivera-Figueroa v. Secretary of Health and Human Services, 858 F.2d 48, 51 (1st Cir. 1988); Soth v. Shalala, 827 F.Supp. 1415, 1417 (S.D. Iowa 1993); Santiago-Santiago v. Secretary of Health and Human Services, 756 F.Supp. 74 (D. Puerto Rico 1991). Also, Leggett v. Chater, 67 F.3d 558, 565 (5th Cir. 1995).

The ALJ found Evans possessed the residual functional capacity to perform a "modified range of medium work" but she was "precluded from performing any complex work". (R. 25). Evans argues that the ALJ does not define a "modified range of medium work", and, regardless, this residual functional capacity is incorrect as it does not conform to the limitations set forth by Dr. Lonowski or by claimant in her own testimony. As previously stated, Dr. Lonowski's opinion was properly discredited by the ALJ. Thus, his failure to rely upon that opinion in determining Evans' residual functional capacity was proper.

Evans argues that the ALJ improperly found her testimony to lack credibility even though it was supported by the medical evidence. However, the ALJ did believed Evans' medically

-11-

determinable impairments could produce the symptoms she experienced. It was simply her statements regarding the intensity, duration and limiting effects of the symptoms he found to be less than credible. Among the contradictions in Evans testimony was the fact that she was able to travel nearly twenty-four hours to Thailand and sit aboard a transcontinental flight despite the fact she stated that she was unable to sit more than five minutes and had to lie flat 90% of her day due to the terrible pain she experienced. (R. 228,232-234). Though she states that she took additional medication to help deal with the pain during the flight, she acknowledges that she takes less medication than Dr. Hashmi prescribed because it makes her ill and that she receives no relief from these medications. (R. 229,240). She also states that her future plans are to "find a way to get better" but she has not sought medical treatment since December of 2005 and has never sought psychiatric treatment. (R. 228, 230, 235). Therefore, it is clear that while the ALJ carefully considered Evans' testimony regarding her chronic pain, he properly determined that her testimony with respect to intensity, duration and limiting effects of her symptoms lacked credibility.

Evans also complains that the ALJ failed to define a "moderate range of light work"; however, a review of the ALJ's decision shows that he limited the amount of work she can perform by the functional abilities to which Evans testified: walk thirty to forty

-12-

minutes, sit five minutes and lift ten pounds. (R. 25).  According to her own testimony, her prior work at the Pitt Grill conforms with this limitations as she was provided breaks on an as needed basis, walked ten to twenty feet at a time, did not lift more than ten pounds, and did not perform any supervisory functions. (R. 26, 83, 238).  The fact that Dr. Lonowski's opinion "contradicts" the ALJ's assessment is of no consequence because the ALJ properly rejected the opinion.

Finally, Evans' contention that a vocational expert should have been obtained is without merit because the ALJ found Evans not disabled and capable of returning to her prior work at step four of the sequential evaluation process.  See, <u>Fields v. Bowen</u>, 805 F.2d 1168, 1170 (5th Cir. 1986), citations omitted.

Accordingly, the record contains substantial evidence which supports the ALJ's assessment of Evans' residual functional capacity.

<u>Conclusion</u>

Based on the foregoing discussion, IT IS RECOMMENDED that Evans' appeal be DENIED and that the final decision of the Commissioner be AFFIRMED.

<u>Objections</u>

Under the provisions of 28 U.S.C. §636(b)(1)(c) and Fed.R.Civ.P. 72(b), the parties have **ten (10) business days** from service of this Report and Recommendation to file specific, written

-13-

objections with the Clerk of Court.   A party may respond too another party's objections within **ten (10) days** after being served with a copy thereof.   A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing.   Timely objections will be considered by the district judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING AN APPEAL ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Alexandria, Louisiana, on this day of November, 2007.

JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE

-14-